## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## CASE NO.

KERRI RONLI WHITLOCK

     Plaintiff,

v.

MED-TRANS CORPORATION

     Defendant. _____/

### COMPLAINT

Plaintiff, KERRI RONLI WHITLOCK ("Plaintiff"), by and through her undersigned attorney, sues Defendant, MED-TRANS CORPORATION ("Med-Trans"), and alleges as follows:

### INTRODUCTION

1.    This is an action for damages, declaratory, and injunctive relief by Plaintiff against Med-Trans for race, sex and national origin discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Florida Civil Rights Act of 1992 ("FCRA"), and 42 U.S.C. §1981

("§1981") as well as for retaliation under Florida's Private Whistleblower Act, Florida Statute §§448.101.104 ("FPWA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Title VII. The Court's supplemental jurisdiction is invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3.      Venue properly lies in this judicial district pursuant to 28 U.S.C. §1391(b), in that the Defendant maintains offices within this judicial district, carries on commerce with citizens of this judicial district at open places of business located within this judicial district and Plaintiff both resides and frequently starts work for Med-Trans within this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

4.      Plaintiff is a female of mixed race and national origin, including those of an African-American, sui juris, and, at all times material to this action, was a resident of Alachua County, Florida.  Plaintiff has dark black, tightly curled thick hair which is frequently perceived as a stereotyped hair of Americans of African-American race and national origin.

5.      Med-Trans is a domestic corporation located incorporated in South Dakota with its principal corporate address of 209 State Highway 121 Bypass, Suite 21, Lewisville, TX 75067.  At all times material to the complaint, Med-Trans

maintained commercial operations within the state of Florida and had Floridian customers.

6.     Plaintiff has complied with all conditions precedent to jurisdiction under Title VII and the FCRA in that she filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") within 300 days of the unfair employment practices alleged in this Complaint; Plaintiff has filed this suit within 90 days of receiving a Right to Sue notice from the EEOC dated February 28, 2023; and Plaintiff is filing this Complaint within the FCRA's four (4) year statute of limitations for the alleged discriminatory acts. Thus, all , administrative prerequisites have been satisfied and this suit is timely filed.

**GENERAL ALLEGATIONS**

7.     Plaintiff started her employment with Med-Trans as a Flight Nurse at some point in July 2019.  Plaintiff was promoted to the management position of Base Manager on January 17, 2022 and awarded a guaranteed incentive in the form of a twenty-thousand-dollar ($20,000.00) stipend.  As of her last check from Med-Trans which was sent on October 21, 2022, Plaintiff had received only five thousand dollars and three cents ($5,000.03).  Plaintiff is also owed an unknown amount of money for unpaid shift differential incentive-based pay which was

promised but never paid subsequent to the date of her constructive discharge via forced resignation, on October 28, 2022.

8.     At some point in early March 2022, an employee at one of the bases Plaintiff was responsible for said "I'm surprised you can put a helmet on given how big and nappy your hair is."  Nappy is a frequently used pejorative to refer in a derogatory way to individuals with stereotypical "African-American" hair. Plaintiff perceived this as a direct insult to her person.  Plaintiff complained to her direct supervisor, Regional Clinical Manager Heather Cady (hereinafter "Heather"), but nothing was said or done.

9.     On March 11, 2022, Plaintiff notified her direct manager Heather that she was still missing substantial portions of her guaranteed twenty-thousand-dollar ($20,000.00) stipend and was not receiving the shift differential bonuses guaranteed in her agreement.  Heather told the Plaintiff she would "Look into it" but nothing was done.  Plaintiff also complained about Nick Fatolitis, an employee under her management, for his inappropriate attitude and refusal to remain in uniform while on shift and refusal to comply with company and OSHA facial hair policy.  Heather simply responded "He's having a hard time, let it go." despite facial hair being a safety concern due to the inability to seal an N95 mask during a pandemic and complaints from several other members of the staff.

10.    Plaintiff brought up the missing stipend and shift differentials to Heather again on March 15 and March 24, 2022 and again Heather promised to "Look into it" but nothing was done.

11.    Flight Paramedic Taylor Gibson (hereinafter "Taylor") was a personal friend of Heather's, as well as someone who was dating one of Heather's closest friends. Taylor was working under Plaintiff's management at one of the bases on April 13, 2022, and Taylor started acting bizarrely after taking medications while on an aircraft which negatively affected her performance in a substantial way. Plaintiff complained to Heather about Taylor's bizarre behavior as well as the missing stipend and shift differentials and was only told that Heather would "Look into it".  Nothing was done to Plaintiff's knowledge.

12.    On April 18, 2022, Plaintiff complains to Heather about a second incident where Taylor was acting bizarrely under medication while on an aircraft at one of Plaintiff's base.  Plaintiff also complains again about the missing stipend and shift differential.  Heather says she will "Look into it."  Plaintiff also complains to the Human Resources Manager Alesha Knight (Hereinafter "HR Manager" or "HR") about the same issues and an electronic "ticket" was issued by the HR Manager to have the Finance department pay her the stipend as well as adjust the shift differential.  This ticket order was never acted on during Plaintiff's employment.

13.     On May 11 and May 24, 2022, Plaintiff again complains to Heather about the lack of payment of the stipend and the shift differential.  On May 24, 2022, Plaintiff also discusses Taylor's bizarre behavior while taking medications on shift.  Nothing is done to Plaintiff's knowledge.

14.     On June 1, 2022, Taylor had a terrible performance day while acting bizarrely under medications and Plaintiff felt that Taylor was putting the patients and crew at substantial risk.  Plaintiff complained to both Heather and the HR Manager and expressly requested that Taylor be removed as a flight paramedic at her base.  Nothing was done to Plaintiff's knowledge.

15.     On June 8, 2022, George Stuart who was a close personal friend of Heather's and romantic paramour of Taylor made a derogatory video about another crewmember and called him "A fucking moron".  George Stuart sent this video to other crewmembers under Plaintiff's management.  When Plaintiff complained to Heather about the behavior and requested authorization to start the disciplinary process, Heather instructed Plaintiff to simply tell George Stuart to "Knock it Off" and to take no further steps.

16.     On June 14, 2022, a re-certification inspection was scheduled at one of the bases under Plaintiff's management.  Heather expressly told Plaintiff not to show up to the certification inspection even though she was the manager of the base.  Instead, the manager sent a checklist for the certification to another

Caucasian/"White" employee, Nick Fatolitis, who had no prior management

responsibilities.  When Plaintiff complained to Heather about this insult to her title

and responsibilities, nothing was done.   In fact, this behavior continued wherein

Heather started including Nick Fatolitis in group emails that only went to Base

Medical Managers and addressed Nick Fatolitis as the manager when visiting the

base rather than Plaintiff.  Heather specifically requested that Nick Fatolitis be

identified as part of the prestigious Lifeline program rather than Plaintiff and when

confronted Heather simply responded that "Nick was allowed to because, you

know, they (meaning Med-Trans executives) just like him better.  He's what they

like."

  17. Throughout June 2022, Med-Trans filmed a 4th of July Safety Video

to be distributed to the general public at one of the bases under Plaintiff's

management.  The video taken included voiceovers and scenes of Plaintiff and five

Caucasian/"White" employees.  After Med-Trans finished the edit and distributed

the video, all of her scenes were edited to remove her physical presence and

although her voiceover remained, they used imagery of a random blonde family.

Plaintiff was the only one who was physically removed.  Plaintiff perceived this to

be a purposeful insult by Med-Trans and she complained to Heather and HR but

nothing was done.

18.    At some point at the end of June 2022, Plaintiff had a telephonic review of her position and received an overall score of 4 out of 5 which was designated as "exceeds expectations".

19.    On June 27, 2022, Heather instructed Plaintiff that she was to make the schedule so that her friend Taylor would receive substantial overtime.  Plaintiff responded that she had grave concerns about giving Taylor overtime given her inability to handle standard hours without anxiety medications and demonstrating extreme anxiety and depression issues while on shift as well as periodic bouts of "bizarre behavior".  Heather simply reiterated the instruction and told Plaintiff to comply with the scheduling directive which Plaintiff did under protest.

20.    On July 6, 2022, sent multiple unflattering pictures of patients in various states of health duress to Plaintiff and Taylor saying he "Hates old people." This nonmedical use of images taken for medical purposes constituted a HIPAA violation.  Plaintiff reported the HIPAA violation to Heather and nothing occurred.

21.    On July 26, 2022, following a confrontation with a subordinate at the base over the subordinate's work deficiencies, the subordinate yelled "Your nappy head will never work here again, this will be escalated!"  Plaintiff complained to Heather about the derogatory use of a racial pejorative and the management again did nothing.

22.    On July 30, 2022, a patient is nearly dropped while getting loaded on the helicopter and Taylor admitted to the Plaintiff that it was her fault for taking too much Benadryl.  The pilot took the aircraft out of the service because Taylor was unable to function the rest of the day.  Plaintiff complained to Heather about Taylor's inability to function properly and nothing was done.

23.    On August 8, 2022, Plaintiff simultaneously received a "promotion" to Program Director at one base, while being demoted back to Flight Nurse at the other base.  While being removed as manager of the base, Plaintiff received a "Final Warning" for allegedly being rude, intimidating, demeaning and unprofessional when addressing the team.  Plaintiff has received no prior warnings and when she asked Heather for specific examples her direct manager simply said "She had no idea".  After receiving this "Final Warning", Plaintiff again went to the HR Manager and said that she believed the demotion and warning were simple retaliation for reporting Taylor's inappropriate misuse of medications while on the job as well as her complaints about unpaid wages.  The HR manager simply said that "Med-Trans upper management will look into her complaint", but nothing was done to Plaintiff's knowledge.   Later that week, Plaintiff spoke to HR again about not being paid her due stipend and shift differentials as well her fears of retaliation for reporting issues to Heather that she had failed to address such as Taylor's

misuse of medications while on the job, the HIPAA issues and continued racial discrimination.  Nothing was done to Plaintiff's knowledge.

24.    On September 16, 2022,  a Flight Nurse under Plaintiff's management specifically requests not to fly again with Taylor due to "drama".  Plaintiff relays this request to Heather but nothing was done.

25.  On September 17, 2022, Taylor requests time off of a scheduled flight shift in order to attend a training.  This same request had been denied to two other crew members as it was standard operating procedure to deny training requests when individuals were scheduled for flights.  Plaintiff denied the request.  Without consulting Plaintiff again, Taylor requests the time off of from Heather who approves the leave and placed another employee into the shift causing a payment of overtime.  When the Plaintiff complained to Heather about being circumvented, Heather simply responded "I think this is fine."

26.    On September 21, 2022, Heather asks to speak with the Plaintiff following a training.  Instantly, Heather becomes irate and hostile and started yelling at Plaintiff for calling and complaining to the HR Manager.  Heather specifically states that she will have Plaintiff terminated for any further complaints about Heather's favoritism, HIPAA violations, unpaid wages and racial discrimination.

27.    On October 10, 2022, the base educator requests that the Plaintiff be present while he spoke with Taylor and another flight nurse about a flight they completed. Plaintiff was present for the entire conversation which was presented in a positive, not accusatory way, to address some deficiencies. Neither Taylor nor the flight nurse appeared distressed and that evening the base educator and Plaintiff returned to the base for a scheduled public relations event. The crew is on a flight upon our arrival and no further interactions occurred.

28.    On October 14, 2022, Heather called the Plaintiff to discuss the October 10, 2022, sit down with Taylor and another flight nurse. Heather becomes extremely irate again and begins yelling. Heather accuses the base educator of yelling "you fucking killed someone" at Taylor after kicking the door open. Plaintiff responded that this was not at all the case and was in fact a complete lie. At that point, Heather said, "Don't you lie for him, don't you lie for Kenny (the base educator)." Heather implicated that Plaintiff should have stepped in and stopped the base educator from allegedly yelling at her friend Taylor.  Heather then went on to tell the Plaintiff, "You are the worst BMM (Base Manager) that I have and the one I speak to the least." Additionally, Heather stated that she never should have hired the Plaintiff, and she was glad that the Plaintiff had not been paid properly, and she approved of the derogatory comments about Plaintiff's alleged "Nappy hair".

29.     On October 18, 2022, an email from a pilot and base safety officer was sent to Plaintiff, Heather, and another base manager which stated in part "All- I want you all to be aware of Taylor's unusual behavior tonight, I've added the following statement below on the flight Baldwin under the wildcard section for documentation in case any issues arise during a flight or flights that may occur while on shift… Crew member exhibiting unusual behavior (minimal verbal interaction normally extremely chatty) and stating that she has taken Adderall today in which they haven't taken in a while. I asked if they are ok. They responded with I need to go for a walk outside for about an hour followed by going directly to their room and closed the door."

30.     On October 19, 2022, Plaintiff spoke with the HR manager about Heather's comments on October 14, 2022, as well as specific concerns about Taylor's misuse of medications and Heather's favoritism which has failed to provide adequate protection for the public.  Plaintiff also complained that Heather failed to discipline her friends for the HIPAA violations.  Plaintiff specifically states that she will prepare written complaints to OSHA and the FAA for the safety concerns, to the EEOC for the continued racial discrimination she faced and to the Florida Board of Medicine for the HIPAA violations, if Med-Trans does not address the issues.

31.    On October 21, 2022, Plaintiff is placed on an administrative leave with no rationale being provided.

32.    On October 26, 2022, Plaintiff complains to the corporate compliance office and the Aviation Regional Safety Office within Med-Trans about pictures being taken of patients by the flight crew to make fun of their physical appearance as well as the safety complaints about Taylor's misuse of medications while on duty.  Plaintiff had previously spoken with Tom Foose, regional safety officer, about crew members use of cellphones in flights to take inappropriate pictures and videos for Tik Tok and other social media videos using the patients in distress. Plaintiff specifically stated that these constituted FAA, GOM, HIPPA violations that could be reported in writing to the appropriate agencies and that she would do so if they were not corrected. As far as Plaintiff is aware nothing was done.

33.    On October 27, 2022, it was announced that Brian Mclarty is hired as the interim base manager of Plaintiff's remaining base multiple subordinates tell Plaintiff she has been "let go".

34.    On October 28, 2022, Respondent felt "forced" to send in a resignation as it was clear from the lack of communication regarding a lengthy "administrative leave" for no reason and reports from subordinates that management had reported her termination, that Plaintiff had been constructively discharged from her employment.

35.    There remains unpaid to Plaintiff the sum of $14,999.97 for the guaranteed base stipend (plus interest accrued) and an undetermined sum (to be defined during discovery) owed for the unpaid shift differentials.

36.    Plaintiff has repeatedly demanded payment of the aforementioned sums, and although the debt was admitted, payment has still not been received.

37.    Plaintiff has satisfied all conditions precedent to bringing this action or these conditions have been waived or otherwise excused.

38.    Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay said attorney a reasonable fee for his services. Plaintiff requests said attorneys' fees as damages in this lawsuit.

**COUNT I: VIOLATION OF FCRA (RACE AND SEX DISCRIMINATION)**

39.    This is an action for discrimination based upon race and sex under the FCRA.

40.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-38 and incorporates these allegations herein by this reference.

41.    Defendant violated the FCRA by discriminating against Plaintiff based upon her race and gender race for reasons including but not limited to, purposefully refusing to pay promised incentives and wages, purposefully removing Plaintiff from scenes in a publicly distributed video and replacing her with a white family, placing a white male subordinate in a position of authority

over her despite her appointed title and duties of Base Manager while being told that he was the employee type their management preferred, and being disciplined, demoted, forced into administrative leave and ultimately forced into a constructive discharge without appropriate reason other than racism and favoritism, and failing to communicate violations of the FAA, GOM, and HIPAA of white employees despite Plaintiff's documentation of their occurrence and management at all levels of Med Trans treating Plaintiff in a disparate way from white and/or male employees.

42. As a result of Defendant's violations of the FCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, KERRI RONLI WHITLOCK, prays that this Court will:

a. Order Defendant, MED-TRANS CORPORATION, to remedy the race and sex discrimination of Plaintiff by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

## COUNT II: VIOLATION OF TITLE VII (RACE AND SEX DISCRIMINATION)

43.    This is an action for discrimination based upon race under Title VII.

44.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-38 and incorporates these allegations herein by this reference.

45.    Defendant violated Title VII by discriminating against Plaintiff based upon her race and sex for reasons including but not limited to purposefully refusing to pay promised incentives and wages, purposefully removing Plaintiff from scenes in a publicly distributed video and replacing her with a white family, placing a white male subordinate in a position of authority over her despite her appointed title and duties of Base Manager while being told that he was the employee type their management preferred, and being disciplined, demoted forced into administrative leave and ultimately forced into a constructive discharge without appropriate reason other than racism and favoritism, and failing to communicate violations of the FAA, GOM, and HIPAA of white employees despite Plaintiff's

documentation of their occurrence and management at all levels of Med Trans treating Plaintiff in a disparate way from white and/or male employees.

46. Defendant's discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with her employment with Med-Trans that employees outside her race and gender were allowed to enjoy.

47. As a result of Defendant's violations of §1981, Plaintiff has been damaged.

WHEREFORE, Plaintiff, KERRI RONLI WHITLOCK, prays that this Court will:

a. Order Defendant, MED-TRANS CORPORATION, to remedy the race and sex discrimination of Plaintiff by:

      i. Paying appropriate back pay;

      ii. Paying prejudgment and post-judgment interest;

      iii. Paying front pay in lieu of reinstatement;

      iv. Paying for lost benefits including medical insurance, pension and retirement plan;

      v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to

Section 760.11(5), Florida Statutes.

**COUNT III: VIOLATION OF §1981 (RACE AND GENDER)**

48.    This is an action for discrimination based upon race/national origin

and gender under 42 U.S.C. §1981. Defendant deprived Plaintiff of her rights of

equal protection of the law against discrimination on the basis of race and gender.

49.    Plaintiff reasserts the general allegations as set forth above in

paragraphs 1-38 and incorporates these allegations herein by this reference.

50.    Defendant violated §1981 by intentionally and purposefully treating

Plaintiff differently in the terms and conditions of her employment because of his

race and gender, including but not limited to, purposefully refusing to pay

promised incentives and wages, purposefully removing Plaintiff from scenes in a

publicly distributed video and replacing her with a white family, placing a white

male subordinate in a position of authority over her despite her appointed title and

duties of Base Manager while being told that he was the employee type their

management preferred, and being disciplined, demoted, forced into administrative

leave and ultimately forced into a constructive discharge without appropriate

reason other than racism and favoritism, and failing to communicate violations of

the FAA, GOM, and HIPAA of white employees despite Plaintiff's documentation

of their occurrence and management at all levels of Med Trans treating Plaintiff in a disparate way from white and/or male employees.

51.    Defendant's discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with her employment with Med-Trans that employees outside his race and gender were allowed to enjoy.

52.    As a result of Defendant's violations of §1981, Plaintiff has been damaged.

WHEREFORE, Plaintiff, KERRI RONLI WHITLOCK, prays that this Court will:

a. Order Defendant, MED-TRANS CORPORATION, to remedy the race discrimination of Plaintiff by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to

Section 760.11(5), Florida Statutes.

### COUNT IV: VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT

53.    Plaintiff reasserts the general allegations as set forth above in

paragraphs 1-38 and incorporates these allegations herein by this reference.

54.    Florida Statute §448.102 (1) prohibits an employer from taking a

retaliatory personnel action against an employee because the employee has

"Disclosed, or threatened to disclose, to any appropriate governmental agency,

under oath, in writing, an activity, policy, or practice of the employer that is in

violation of a law, rule, or regulation."   Plaintiff repeatedly disclosed violations of

the FAA, GOM, and HIPAA of white employees to Med-Trans Management as

well as made it clear that she would be reporting the racial and gender

discrimination she faced to the EEOC if these were not corrected.  Plaintiff

communicated that she was prepared to disclose these violations under oath and in

writing to the appropriate agencies.  Nevertheless, Defendant chose to first

discipline and then force an administrative leave and later a constructive discharge

despite these protected whistleblowing activities.  Med-Trans had multiple

reasonable opportunities to correct the violations but chose to take retaliatory

action against Plaintiff instead.

55.    Florida Statute §448.102 (3) prohibits an employer from taking a retaliatory personnel action against an employee because the employee has "Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer." Med-Trans continued its retaliatory personnel actions in part, but not limited to, by disciplining Plaintiff with a "Final Warning" without appropriate reason or prior warnings, demoting Plaintiff from Base Manager at one base, forcing Plaintiff against her will on administrative leave and ultimately forcing a constructive discharge of her employment through a forced resignation.

56.    Med-Trans's actions in disciplining Plaintiff with a "Final Warning" without appropriate reason or prior warnings, demoting Plaintiff from Base Manager at one base, placing Plaintiff against her will on administrative leave and ultimately forcing a constructive discharge of her employment through a forced resignation constitutes adverse employment action and "retaliatory personnel action" under section 448.101(5) of the FWPA.

57.    Plaintiff's statutorily protected conduct under the FWPA was casually connected to Med-Trans' decisions to discipline, demote, place on administrative leave and ultimately force a resignation, as they are close in time to her protected conduct.

58. As a result of Med-Trans' violation of the FWPA, Plaintiff has been damaged.

a. Order Defendant, MED-TRANS CORPORATION, to remedy the violation of the FWPA by Med-Trans by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 448.104, Florida Statutes.

**COUNT V: BREACH OF WRITTEN EMPLOYMENT CONTRACT**

59. Plaintiff re-alleges the allegations contained in paragraphs 1-7, 9, 12, 13, 18, 23, 26, 28, 35-38 above.

60. Plaintiff and Defendant entered into a written employment agreement as described for her work.

61.    Pursuant to the parties' agreement Defendant agreed to compensate the Plaintiff at the terms specified above.

62.    An essential term of the employment agreement was that Defendant would pay Plaintiff according to the terms of said agreement.

63.    Defendant has willfully failed to pay Plaintiff for worked performed.

64.    Plaintiff has been damaged due to Defendant's willful failure to pay Plaintiff the appropriate agreed upon incentives and shift differentials.

65.    Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of the action and a reasonable attorney's fee.

WHEREFORE, Plaintiff requests judgment against the Defendant for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as the court may deem proper.

**COUNT VI: BREACH OF ORAL EMPLOYMENT CONTRACT**

66.    Plaintiff re-alleges the allegations contained in paragraphs 1-7, 9, 12, 13, 18, 23, 26, 28, 35-38 above.  This count is alleged in the alternative to Counts V and VII.

67.    Plaintiff and Defendant entered into an oral employment agreement with the terms specified in the above allegations to pay Plaintiff for her work.

68.    Pursuant to the parties' agreement Defendant agreed to compensate the Plaintiff at the terms specified above.

69.     An essential term of the employment agreement was that Defendant would pay Plaintiff according to the terms of said agreement.

70.     Defendant has willfully failed to pay Plaintiff for worked performed.

71.     Plaintiff has been damaged due to Defendant's willful failure to pay Plaintiff the appropriate agreed upon incentives and shift differentials.

72.     Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of the action and a reasonable attorney's fee.

WHEREFORE, Plaintiff requests judgment against the Defendant for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as the court may deem proper.

## COUNT VII – UNJUST ENRICHMENT

73.     Plaintiff re-alleges the allegations contained in paragraphs 1-7, 9, 12, 13, 18, 23, 26, 28, 35-38 above.  This count is alleged in the alternative to Counts VI and VII.

74.     As an alternative pleading to the allegations in Counts I and II, Plaintiff gave Defendant benefits but was not compensated fully for her services.

75.     Defendant has accepted these services and never objected to the same.

76.     Plaintiff has been damaged due to Defendant's willful failure to pay Plaintiff for all of her services.

77.    Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of the action and a reasonable attorney's fee.

WHEREFORE, Plaintiff requests judgment against the Defendant for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as the court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff, KERRI RONLI WHITLOCK, hereby demands trial by jury on all claims triable by right of jury under state or federal law.

Dated this 30th day of May 2023

Respectfully submitted,

*Warren J. Pearson, JD*

Warren James Pearson, JD
3562 Four Oaks Blvd
Tallahassee FL 32311
Independent Co-Counsel with Marble Law
Counsel for Plaintiff
Telephone: (954) 894-3035
E-mail: warpear@gmail.com
Florida Bar No.: 0711576